# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
July 17, 2002 Session

## DONALD WALLACE v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Stewart County**
**No. 4-769-CR-96     Robert E. Burch, Judge**

---

**No. M2004-02976-CCA-RM-PC - January 31, 2005**

---

This case has taken a rather Byzantine course through the Tennessee courts. Originally, the defendant was convicted of the 1996 first degree premeditated murder of Melinda Sue Perrin. This court reversed the conviction based upon insufficiency of evidence of a premeditated killing. We imposed a conviction of second degree murder and remanded to the trial court for sentencing. *See State v. Donald Wallace*, No. 01C01-9711-CC-00526 (Tenn. Crim. App., Nashville, Sept. 30, 1998) (*Wallace I*). In *Wallace I*, this court declined to adjudicate certain issues on appeal for lack of a timely motion for a new trial. *Id.*, slip op. at 7-8. On remand, the court imposed a sentence of 25 years, and this court affirmed the sentence. *See State v. Donald Wallace*, No. M1999-00954-CCA-R3-CD (Tenn. Crim. App., Nashville, Nov. 29, 1999) (*Wallace II*). During the pendency of the sentencing appeal, the defendant filed a petition for post-conviction relief. The post-conviction court denied relief except to grant the defendant a new opportunity to file a motion for new trial and an appeal. *See Donald Wallace v. State*, No. M2001-02722-CCA-R3-PC (Tenn. Crim. App., Nashville, Dec. 9, 2002) (*Wallace III*). The post-conviction ruling was not appealed, but after the trial court denied the defendant's new motion for new trial, the defendant appealed the denial of the motion, resulting in the opinion in *Wallace III*. In that opinion, this court held that the defendant was entitled to no statutory delayed appeal and that the post-conviction court had erred in availing a new opportunity for a new trial motion and appeal without requiring a showing of prejudice as a prerequisite of a claim of ineffective assistance of counsel. *Wallace III*, slip op. at 5-8. Our supreme court granted an appeal, reversed, and remanded the case to this court for adjudication of the issues raised in the dispensatory motion for new trial and appeal in *Wallace III*. *See Wallace v. State*, 121 S.W.3d 652 (Tenn. 2003) (*Wallace IV*).[1] We now undertake to fulfill the terms of the supreme court's remand by determining whether (1) the trial court erred in allowing the state to use hearsay evidence and (2) the prosecutor was guilty of misconduct that deprived the defendant of due process and a fair trial. Upon our review, we discern no reversible error and affirm the conviction of second degree murder.

**Tenn. R. App. P. 3; Judgment of the Circuit Court is Affirmed.**

---

[1]The case was not administratively remanded to the Court of Criminal Appeals until December 17, 2004.

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which ALAN E. GLENN, J., joined. THOMAS T. WOODALL, J., not participating.

Richard McGee, Nashville, Tennessee; and James O. Martin, III, Nashville, Tennessee, for the Appellant, Donald Wallace.

Michael E. Moore, Solicitor General; David H. Findley, Assistant Attorney General; Dan Alsobrooks, District Attorney General; and Robert S. Wilson, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

At the defendant's post-conviction hearing, the defendant claimed that the state had suppressed a June 10, 1996 Tennessee Bureau of Investigation (TBI) interview of Linda Wallace wherein she said that the victim told her that she was not afraid of the defendant. *Wallace III*, slip op. at 3. Trial counsel testified that he did not receive or see the report. Trial counsel explained how he could have used the report to impeach Linda Wallace at trial and to undercut the state's case. *Id.*, slip op. at 3-4. Prosecution counsel testified at the post-conviction hearing that he followed an open-file discovery policy; he believed that the document was in the case file when it was offered to trial counsel to review and photocopy. *Id.*, slip op. at 4.

At the post-conviction hearing, trial counsel was asked to explain why he did not file a timely new-trial motion. He testified that when he was retained to represent the defendant, he had the client sign a waiver acknowledging that counsel would not be representing him on any appeal. *Id.* With the waiver of counsel, trial counsel believed that he "would not have to get the Court's permission to be relieved from any appeals." *Id.* Accordingly, after the verdict, trial counsel sent the defendant a letter with a form motion for new trial and advised the defendant of the time frame for filing the motion and of possible issues to be included in the motion. Subsequently, trial counsel filed a written motion to withdraw as counsel, which the trial court granted because in the interim the defendant had submitted a *pro se* motion for new trial that included allegations of ineffective assistance of counsel.

The post-conviction court found trial counsel ineffective in failing to file a new trial motion. *Id.*, slip op. at 4-5. As a remedy, it granted the defendant an opportunity to file a motion for new trial and, if unsuccessful, to pursue an appeal of the issues raised in the motion. *Id.*, slip op. at 5. No appeal was taken from this order.

Ultimately, the motion for new trial was filed and denied, and the defendant appealed. This court held that it had no jurisdiction to entertain a second "direct" appeal after the entry of a final judgment following the first appeal. *Id.*, slip op. at 7. On the issue of ineffective assistance of trial counsel leading to a second direct appeal, we held that the post-conviction court should not have availed a new appeal without requiring the defendant, as post-conviction petitioner, to establish prejudice as a result of deficient performance of counsel. *Id.*, slip op. at 8.

The supreme court granted the defendant a discretionary appeal from this court's dismissal of the second direct appeal. The court held that "counsel's performance following the defendant's conviction was deficient and presumptively prejudicial. As a direct result of counsel's ineffective assistance, the defendant was procedurally barred from pursuing issues on appeal." *Wallace IV*, 121 S.W.3d at 660. The court remanded the case to this court "for review of the issues presented by the defendant's appeal from the trial court's denial of his motion for a new trial." *Id.*

Pursuant to the terms of the supreme court's remand, we now undertake to review the claims of error presented by the defendant in his second direct appeal. The claims are that (1) the trial court erred in allowing Linda Wallace's hearsay testimony that the victim stated that she was afraid of the defendant, and (2) the defendant was denied a fair trial when the prosecutor failed to disclose Linda Wallace's pretrial statement that contradicted her assertion that the victim feared the defendant.

Before we examine these issues, we summarize the facts of the case. *See Wallace I* (describing the evidence presented at the defendant's trial). Essentially, the evidence at trial showed that the victim was the defendant's girlfriend. On June 8, the couple drove to the home of Charles Morgan, the defendant's friend, where the defendant prevailed upon Morgan to sell to him a sawed-off pump shotgun and two shells. *Id.*, slip op. at 2-3. The defendant told Morgan that "he needed the shotgun for protection because somebody was threatening to kill him." *Id.*, slip op. at 3.

After the sale, the couple drove to the Clarksville residence of Norman and Linda Wallace. *Id.* Norman Wallace and the defendant left a short time later. They first drove to the home of the defendant's mother, and then they tried to locate "Red," who had been threatening the defendant's mother and girlfriend because of an outstanding debt that the defendant owed. *Id.* The men failed to find "Red" and next drove to the residence of Junior Shephard in Big Rock. *Id.* Shephard's wife threatened to summon the police if the men did not leave, whereupon they departed and returned to Norman Wallace's home. *Id.*, slip op. at 4.

During the men's absence, the victim and Linda Wallace conversed casually. Linda Wallace testified at trial that "during this visit, Melinda told her that she was afraid of the [defendant] because he had previously pulled a gun on her." *Id.* Other than that statement, both Norman and Linda Wallace testified that there did not appear to be any "discord" between the victim and the defendant; in fact, the defendant frequently addressed the victim as "baby" or "honey" in the Wallaces' presence. *Id.*

Later that day, shortly after 7:00 p.m., several patrons at J.T.'s Bait Shop in Stewart County noticed a dark-colored vehicle pull into the parking lot at a high rate of speed and come to an abrupt stop. *Id.*, slip op. at 5. The driver's side door opened, and a man's foot appeared. Bystanders heard a loud boom and saw smoke emerge from the car windows; one witness described what appeared to be "the head of the female passenger exploding." *Id.* After the explosion, the

driver drove out of the parking lot. At trial, the witnesses identified the defendant as the driver and the victim as the female passenger. *Id.*

The following day, the victim's body was discovered in a remote area in Stewart County. *Id.*, slip op. at 5-6. Eighteen days after the shooting, the defendant voluntarily surrendered to law enforcement authorities. Investigators never recovered the murder weapon and never located the defendant's vehicle. *Id.*, slip op. at 6-7. At trial, the defendant suggested that the victim's fatal wound was self-inflicted. The jury disagreed and convicted the defendant of premeditated, first degree murder. *Id.*, slip op. at 7.

## I. Admission of Hearsay Testimony.

Linda Wallace, the wife of the defendant's cousin, was called as a state witness. Ms. Wallace testified over objection that when the defendant had left her and the victim alone on the day of the homicide, the victim told Ms. Wallace that she feared the defendant because he had previously pulled a gun on her. The defendant claims that Ms. Wallace's testimony was inadmissible hearsay and that he was prejudiced from the use of the hearsay testimony because his defense theory was that the victim had accidentally discharged the shotgun. He points to evidence that barely more than an hour before the shooting, he and the victim were companionable and that he addressed the victim in endearing terms. The state counters that the trial court correctly admitted the hearsay. After a jury-out hearing on the hearsay issue, the trial court found that the state could introduce the hearsay statement via the hearsay rule exception for illustrating the declarant's state of mind. The trial court found that the defendant had "opened the door" by eliciting testimony on cross-examination of witnesses that the victim and the defendant evinced no animosity to each other. The state posits that the trial court allowed the introduction of Ms. Wallace's recounting of the victim's statement as a means of showing the victim's state of mind. The state argues that the decision was well within the discretion of the trial court, especially when the court cautioned the jury to consider the evidence only for purposes of evaluating the victim's state of mind. Furthermore, the state argues that if the trial court erred in admitting the victim's statement, the error was harmless based upon the overwhelming evidence that belied the defendant's theory of the case.

We first address our standard of review of the trial court's ruling on the hearsay issue. Hearsay is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). Significantly, hearsay is not admissible unless admission is authorized by the evidence rules or by other controlling provisions of law. *Id.* 802; *see id.* 803 (establishing hearsay exceptions that do not depend upon a showing of delcarant's unavailability), 804 (establishing hearsay exceptions that depend upon a showing of declarant's unavailability). Accordingly, a trial court's ruling on whether a statement is hearsay is a question of law, and the appellate court reviews the issue *de novo* without a presumption of correctness. *See Shelia Rae Gibbs v. Robin Media Group*, No. M1999-00820-COA-R3-CV, slip op. at 3 (Tenn. Ct. App., Nashville, Aug. 25, 2000); *Russell v. Crutchfield*, 988 S.W.2d 168, 170 (Tenn. Ct. App. 1998).

In the present case, the state posits that the victim's extrajudicial statement was admissible as a declaration of her state of mind. Tennessee Rule of Evidence 803(3) addresses the hearsay rule exception for "then existing" mental, emotional, or physical condition:

> A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

Tenn. R. Evid. 803(3). The Advisory Commission for the Rules of Evidence opines that "only the *declarant's* conduct, not some third party's conduct, is provable by this hearsay exception." *See id.* 803(3), Advisory Comm'n Comments (emphasis added).

We hold that the trial court erred in admitting Ms. Wallace's testimony of the victim's extrajudicial statement. The statement was hearsay. Whatever else can be said about the purpose of introducing the statement, its import lies in the fact that the victim feared the defendant, as her statement attests. Thus, it was effectively offered to prove the truth of the matter asserted by the declarant. As hearsay, however, the testimony nevertheless may have been admissible pursuant to the state of mind exception to show the victim's – as opposed to the defendant's – then existing state of mind. That said, we must conclude that the victim's state of mind is not relevant to any material issue at trial. *See* Tenn. R. Evid. 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."); *id.* 402 ("Evidence which is not relevant is not admissible.").

In *State v. Leming*, 3 S.W.3d 7 (Tenn. Crim. App. 1998), this court adjudicated a similar issue of the state utilizing "the victim's statement expressing his fears about the defendant." *Id.* at 18. The court said that such evidence "would not be relevant for the state's case to prove the defendant's guilt, even if viewed as evidence of the victim's state of mind." *Id.* As in *Leming*, in the present case "[t]here was no evidence presented or claim made about the victim's conduct that would make [her] state of mind as reflected by [her] statements relevant to an issue on trial." *Id.*

Our next task is to determine whether the use of this inadmissible testimony was harmless error. *See* Tenn. R. Crim. P. 52(a) ("No judgment of conviction shall be reversed on appeal except for errors which affirmatively appear to have affected the result of the trial on the merits."). The state claims that the overwhelming evidence of the defendant's guilt of second degree murder belies any argument that the error affected the result of the trial. We agree.

Witnesses to the victim's shooting testified that the defendant was in the vehicle with the victim, contrary to the defendant's pretrial claim that he was not present. The witnesses saw the defendant drive a dark car swiftly into the bait shop parking lot. The car stopped abruptly. Ronald

Green thought he saw a "sawed-off shotgun" in the defendant's hand just before hearing the shot. After the gunshot, he saw the defendant close the car door and drive away, but he and two other witnesses heard another shot before the car traveled 200 to 300 yards. The jury heard other testimony that the shotgun purchased by the defendant earlier in the day was a pump shotgun that required the operator to pump a new shell into the chamber after each discharge. Heather Stevens saw the defendant and the victim in the car and saw the defendant slap the victim. She testified that the defendant then opened his car door, placed a foot outside the car, reached toward the floor, and pointed an object toward the victim. Ms. Stevens then heard a shot. She saw smoke and the victim's head exploding. The jury heard an expert's medical opinion that the victim probably did not self-inflict the fatal gunshot wound.

Thus, we are unpersuaded that the testimony regarding the victim's professed fear of the defendant affected the jury's verdict. Curiously, we may have attributed significantly more prejudice to the admission of the victim's hearsay statement had the defendant claimed at trial that *he* accidentally shot the victim. His defense that the victim shot herself, however, is squarely at odds with the testimony of apparently disinterested witnesses who saw him point an object at the victim and who heard a second gunshot emanating from the car. We conclude that the jury accredited these witnesses, and we doubt that the victim's hearsay statement substantially impacted the jury's verdict.

## II. Prosecutorial Misconduct.

The defendant claims that the prosecution withheld certain exculpatory materials that should have been disclosed to him prior to trial and that the omission is tantamount to prosecutorial misconduct. The defendant's post-conviction counsel learned that, prior to trial, the prosecution had possession of a TBI report recounting Linda Wallace's statement to a TBI agent that, on the day of the shooting, the victim was not fearful of the defendant. The report was not furnished to the defense prior to trial and did not surface until the defendant's post-conviction petition was pending. The defendant claims that the failure to disclose the report prior to trial deprived him of due process and a fair trial.

In overruling the motion for new trial, the trial court found that the state should have known that statements of the state's proposed witnesses were included in the defendant's pretrial request for disclosure; however, the court found that the state did not suppress the report. Specifically, the court found that defense counsel had inspected the state's file pursuant to the prosecutor's "open file" policy. The court did not equate defense counsel's not remembering seeing the report with the state's suppressing it. The trial court determined that the content of the report was marginally exculpatory[2]; however, the court thought that the use of the report and the possible impeachment of Ms. Wallace would have been far more critical to the defense on the issue of premeditation. In view of this court's finding of insufficiency of evidence of premeditation and

---

[2]A copy of the report in the record shows that Ms. Wallace was quoted as saying that the victim said that the defendant had pulled a gun on her in Waverly. Ms. Wallace stated that the victim said "she wasn't sure if she wanted to marry him. She said she wasn't scared of him."

reversing the first degree murder conviction, the trial court saw little potential for prejudice in the failure to disclose the report. Finally, the trial court determined that the report was not material because it did not represent a reasonable probability of a different result at trial.

In *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963), the United States Supreme Court held that the prosecution has a constitutional duty to furnish an accused with exculpatory evidence pertaining to either the accused's guilt or innocence and the punishment that may be imposed. Failure to reveal exculpatory evidence violates due process when the evidence is material either to guilt or punishment, irrespective of good faith or bad faith of the prosecution. *Id.* at 87, 83 S. Ct. at 1196-97. In *Strickler v. Greene*, 527 U.S. 263, 119 S. Ct. 1936 (1999), the Court enumerated three components of a *Brady* violation: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Id.* at 281-82, 119 S. Ct. at 1948.

In *United States v. Bagley*, 473 U.S. 667, 105 S. Ct. 3375 (1985), the Supreme Court explained that constitutional error results in the withholding of "material" evidence, and materiality exists when "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 682, 105 S. Ct. at 3383.

The "materiality" of suppressed, favorable evidence was discussed at length in *Kyles v. Whitley*, 514 U.S. 419, 115 S. Ct. 1555 (1995), and *Johnson v. State*, 38 S.W.3d 52 (Tenn. 2001). Four aspects are highlighted in those cases. First, materiality does not demand a showing by a preponderance that the suppressed evidence would have resulted in the defendant's acquittal. *Kyles*, 514 U.S. at 434, 115 S. Ct. at 1566; *Johnson*, 38 S.W.3d at 58. Second, materiality is not an evidence-sufficiency test. *Kyles*, 514 U.S. at 434, 115 S. Ct. at 1566; *Johnson*, 38 S.W.3d at 58. Third, once constitutional error has been found, there is no need for further harmless-error review. *Kyles*, 514 U.S. at 435, 115 S. Ct. at 1566; *Johnson*, 38 S.W.3d at 63. Last, the "suppressed evidence [is to be] considered collectively, not item by item" to gauge materiality. *Kyles*, 514 U.S. at 436, 115 S. Ct. at 1567. Plainly stated, establishing materiality requires a "showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id.* at 435, 115 S. Ct. at 1566; *see Johnson*, 38 S.W.3d at 58.

We agree with the trial court's analysis that the defendant failed to prove materiality as a prerequisite to a *Brady* due process claim. Above we cited factors that attenuated the defendant's claim that reversible error resulted from the trial court's allowance of hearsay evidence. The same factors minimize the likelihood of prejudice resulting from the failure to disclose the TBI report. Independent eyewitness testimony, accredited by the jury, cannot be reasonably reconciled with the defendant's claim that the victim accidentally shot herself. Moreover, the trial court aptly commented that both Ms. Wallace's testimony and the contradictory TBI report were more poignant when premeditation was an element of the conviction offense. All in all, we conclude that the record supports the trial court's determination that no deprivation of due process occurred.

### III. Conclusion.

In conclusion, we discern no reversible error and affirm the conviction of second degree murder.

_____
JAMES CURWOOD WITT, JR., JUDGE